UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD, as successor to FIRE AND CASUALTY INSURANCE COMPANY OF CONNECTICUT, | : : : : : | |
| Petitioner, | : : | CIVIL NO. 3:03 CV 1000 (PCD) |
| -vs- | : : | |
| TRUSTMARK INSURANCE COMPANY, | : : : | |
| Respondent. | : | |

**RULING ON PETITIONER'S MOTION FOR CONTEMPT**

Petitioner Security Insurance Co., as successor in interest to Fire and Casualty Insurance Co. of Connecticut ("FCIC"), moves the Court to hold Respondent Trustmark Insurance Co. ("Trustmark") in contempt [Doc. No. 23] for failure to comply with the Arbitration Award confirmed by this Court in September, 2003. Petitioner requests that the Court enter a judgment against Trustmark for $9,424,337 plus interest and expenses. In response, Trustmark seeks an order: dismissing Petitioner's motion; declaring that Trustmark has satisfied its obligations under the Arbitration Award; declaring that FCIC has waived any right to offset against future claim payments to the California Department of Insurance, if any; and, alternatively, remanding this matter to the Arbitration Panel to resolve any ambiguity. For the reasons set forth herein, the Court **remands** this matter to the Arbitration Panel to resolve an ambiguity in the Arbitration Award, and this proceeding is **stayed** until the Court receives clarification from the Arbitration Panel.

II.     **BACKGROUND**

This suit arises from a 1998 agreement ("the reinsurance agreement") between Trustmark and FCIC which provided that FCIC would act as a "front" for Trustmark's business reinsuring insurance companies that sold workers' compensation insurance to employers. (Final Order dated May 23, 2003, In the Matter of the Arbitration of FCIC and Trustmark (the "Arbitration Award" or "Order") ¶¶ A, B.) One such company to which Trustmark offered this reinsurance was UniCare Insurance Company (later merged into Fremont Compensation Insurance Company) ("UniCare/Fremont"). Under the reinsurance agreement, FCIC would reinsure UniCare/Fremont, and Trustmark in turn would reinsure FCIC on all parts except those few parts of a workers' compensation policy that Trustmark could not legally cover. (See Pet'r's Mem. of Law in Supp. of Mot. for Contempt at 1; Haver Decl., §§ 3, 4, Ex. A, B.) FCIC and Trustmark's agreement included the following basic terms: FCIC had no obligation to manage or handle insurance claims; FCIC was not supposed to pay claims in advance; and Trustmark and its agents were to deal directly with UniCare. (Resp't's Resp. at 5; Decl. Ex. 1 at 58-59.).

In 2000, the fronting relationship between Trustmark and FCIC appears to have broken down. According to Trustmark, FCIC began interfering with claims administration and payment contrary to the reinsurance agreement. (Resp't's Resp. at 6; Lester Decl. Exs. 5, 6.) Although the briefs do not expressly state what went on, it appears that FCIC paid claims amounting to more than $15 million directly to UniCare/Fremont, for which it then sought reimbursement from Trustmark. FCIC brought an action in this Court (FCIC v. Trustmark, Docket No. 3:01-cv-02414-CFD) in December, 2001, alleging that Trustmark failed to pay claims properly ceded to it under their agreement and that it was entitled to recover $4,877,191 in losses and associated expenses currently owed FCIC by Trustmark. (Complaint ¶¶ 9, 12.) FCIC also

alleged that Trustmark had clearly announced its intent to refuse to perform under the agreement in the future, and so FCIC sought recovery of an additional $14,873,086 in losses that FCIC estimated Trustmark would ultimately be required to pay. (Id.) That case was voluntarily dismissed on February 15, 2002 [Doc. No. 12], and the parties pursued their claims before an arbitration panel in New York pursuant to the arbitration provision of their reinsurance agreement (the "Arbitration Panel").

In its arbitration demand, FCIC sought: (1) an order directing Trustmark to pay the entire amount claimed to be owed ($15,766,788); (2) the present value of future claims; (3) damages for the breach of the duty of good faith and fair dealing; (4) punitive damages; and (5) attorney fees. (Resp't's Resp. at 8.) Trustmark asked the Panel to declare the reinsurance agreement void *ab initio* because of FCIC's alleged material breaches and frustration of Trustmark's access to information. Alternatively, Trustmark asked the Panel to declare that it was not responsible for the payment of claims that were not covered by the reinsurance agreement but that were paid by FCIC to UniCare/Fremont. (Resp't's Resp. at 5; Decl. Ex. 40.)

The Arbitration Panel issued its award in May, 2003, which was confirmed by this Court in July, 2003 (FCIC v. Trustmark, Docket No. 3:03-cv-1000-PCD, Doc. No. 19). The Arbitration Panel concluded that UniCare/Fremont had "misallocated and improperly reported to FCIC and Trustmark for payment pursuant to the Reinsurance Agreement" a total of $9,424,337, "for which Trustmark did not assume liability" under its agreement with FCIC. (Arbitration Award ¶ 2.) The Panel found that Trustmark owed FCIC $6,342,451 ($15,766,788, the entire sum requested by FCIC, less $9,424,337, the amount not assumed by Trustmark under its agreement with FCIC). (Award ¶ 3.) The Panel also concluded that FCIC was entitled to

reimbursement of the $9,424,337 it paid to UniCare/Fremont, and in Paragraph 4 of the

Arbitration Award it established two alternative procedures through which FCIC could seek

reimbursement:

> (a) In the event that FCIC, in its sole discretion, determines that offset will not provide it with the timely recapture of these monies, it may pursue its arbitration or other legal rights pursuant to the Reinsurance Agreement and applicable state law. Because the evidence of the misallocated and improperly reported amounts set forth in Paragraph 2 above resides in the hands of Trustmark and its witnesses, FCIC shall, in its sole discretion, prepare and execute a power of attorney enabling Trustmark to initiate an arbitration or other appropriate legal proceeding in FCIC's name against UniCare/Fremont. FCIC shall bear all the expenses in connection with this arbitration or other legal proceeding. In the event that the arbitration or other legal expenses exceed 25% of the ultimate award, Trustmark shall pay one-half of any such expenses in excess of 25%. In the event that it is found in an arbitration or other legal proceeding that UniCare/Fremont did not misallocate or improperly report to FCIC and Trustmark any or all of the amounts set forth in Paragraph 2 above, Trustmark shall promptly return such amounts to FCIC.
>
> (b) In the event that Trustmark refuses to bring an arbitration proceeding on behalf of FCIC against UniCare/Fremont within six (6) months from the date of the execution of the FCIC power of attorney, then it shall pay $9,424,337 to FCIC.
>
> (c) In the event that UniCare/Fremont voluntarily pays $9,424,337 to FCIC, no arbitration or other proceeding relating these amounts set forth in Paragraph 2 is necessary.
>
> (d) In the event that FCIC decides not to seek reimbursement of the amounts set forth in Paragraph 2 above or enforce its rights by means of an arbitration or other legal proceeding against UniCare/Fremont pursuant to Paragraph 4(a) above, Trustmark shall have no responsibility to FCIC for the amounts set forth in Paragraph 2 above.
>
> (e) In any proceeding conducted pursuant to Paragraph 4(a) above, both FCIC and Trustmark shall afford each other full and complete cooperation.

(Award ¶ 4.) On June 5, 2003, FCIC moved this Court for an order confirming the Arbitration

Award, and the Court entered a judgment confirming it on September 25, 2003. Since then,

Trustmark has paid FCIC the $6,342,451 ordered by the Panel (Haver Decl. ¶ 10), but FCIC has

yet to recover the remaining $9,424,337 to which it is entitled.

Shortly after the Arbitration Panel issued its award, UniCare/Fremont became insolvent

and entered liquidation proceedings in the California Superior Court, which issued a restraining

order enjoining all persons "from instituting or prosecuting or maintaining any action at law or suit in equity, ... and matters in arbitration ... against the Respondent or against the Liquidator." (Resp't's Resp. Ex. 29, Order Appointing Insurance Commissioner as Liquidator and Restraining Orders, Ins. Commissioner of the State of California v. Fremont Indemnity Co, Case No. BS083582 (Cal. Superior Court July 2, 2003) ¶ 8.) Any claims against UniCare/Fremont's estate were to be filed by June 30, 2004. (Id. ¶ 30.)

On April 30, 2004, FCIC sent a signed copy of the Misallocation Power of Attorney to Trustmark, which FCIC stated was "executed pursuant to paragraph 4(a)" of the Arbitration Award. (Resp't's Resp. Ex. 26.) On June 23, 2004, Trustmark sent FCIC the Proof of Claim it prepared on FCIC's behalf to file with the Consolidation and Liquidation Office (CLO) of the California Department of Insurance seeking the return of the $9,424,337 in misallocated and improperly reported claims ceded to FCIC. (Resp't's Resp. Ex. 32.) FCIC edited and executed the claim on June 28, 2004. (Resp't's Resp. Ex. 33.)

On October 27, 2004, Trustmark sent a letter to FCIC stating that it filed a proof of claim with the CLO on June 28, 2004, and that it decided that "attempting to institute an arbitration to recover those funds at this time would be a costly and ultimately futile effort[.]" (Resp't's Resp. Ex. 34.) The letter stated that Trustmark would continue to purse FCIC's claim in the UniCare/Fremont estate and that it considered itself in complete compliance with the Arbitration Award. Trustmark also assured FCIC that if FCIC were to "demand that Trustmark immediately pursue an arbitration and the concomitant action to lift the stay," it would do so, provided FCIC reimbursed its counsel for all fees and expenses. (Id.) According to Trustmark, the only response Trustmark received from FCIC was a brief letter from its counsel more than a year later,

dated December 21, 2005, stating FCIC was eager to understand everything that had taken place between Trustmark and UniCare/Fremont after the Award had been issued and requesting copies of all documents pertaining to any dealings between the two. (Resp't's Resp. Ex. 35.) Trustmark replied on January 3, 2006, describing Trustmark's August 2005 meeting on FCIC's behalf with representatives of the CLO. (Resp't's Resp. Ex. 36.) According to Trustmark, the next communication it received from FCIC was this motion for contempt, filed in July, 2006.

In the motion currently pending before this Court, FCIC seeks an order of contempt to remedy Trustmark's alleged failure to either pay the remaining monies owed to FCIC or pursue FCIC's claim in arbitration as ordered by the Panel. In response, Trustmark maintains that its pursuit of a claim on behalf of FCIC with the CLO satisfies the order of the Arbitration Panel. Specifically, Trustmark contends that the Arbitration Award provided for a recovery scheme in which Trustmark initiated arbitration or another legal proceeding to recover the monies owed to FCIC. FCIC maintains that Trustmark was required to initiate arbitration, and not any other legal proceeding, and that, having failed to do so, Trustmark is in contempt and must now pay the sum in question to FCIC.

### III.   DISCUSSION

A party may be held in civil contempt when (1) the party fails to comply with a clear and unambiguous order, (2) such noncompliance is established by clear and convincing evidence, and (3) the party has not diligently attempted to comply in a reasonable manner. Security Ins. Co. of Hartford v. Trustmark Ins. Co., 2002 WL 32502104, at *3 (D. Conn. Nov. 13, 2002) (citing N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir.1989)).

FCIC argues that Trustmark has failed to comply with the clear and unambiguous order of

the Arbitration Panel requiring Trustmark to pursue arbitration on its behalf or pay reimburse FCIC itself the $9,424,337 that the Arbitration Panel deemed it was owed.  In response, Trustmark argues that the Panel also provided that Trustmark could comply with the Order by pursuing other legal proceedings.  Trustmark also contends that FCIC has not established Trustmark's noncompliance by clear and convincing evidence and that Trustmark has diligently attempted to comply in a reasonable manner.

The Order is not as clear and unambiguous as FCIC makes it seem.  FCIC is correct that Paragraph 4(b) of the Order simply states that, "[i]n the event that Trustmark refuses to bring an arbitration proceeding on behalf of FCIC..., then it shall pay $9,424,337 to FCIC."  (Award ¶ 4(b).)  However, FCIC cites this paragraph without reference to the remaining subsections of Paragraph 4, all of which discuss Trustmark's obligation to bring an arbitration *or other proceeding* to pursue FCIC's claim.  (See id. ¶¶ 4(a), (c), (d).)  While it is clear and unambiguous that the Order provides FCIC with two options, either to recapture its monies by offset or to have Trustmark pursue a claim on FCIC's behalf in some sort of legal proceeding, the Order is ambiguous as to whether or not the second alternative requires Trustmark to initiate arbitration or whether another appropriate legal proceeding will suffice.  Trustmark contends that Paragraph 4(b), which omits the reference to other legal proceedings, appears to be an exception to the general terms of the Order rather than the rule, an accidental drafting error rather than a dispositive declaration.  (Resp't's Resp. at 14-15.)  The first sentence of Paragraph 4 makes reference to FCIC's arbitration "or other legal rights" pursuant to the Reinsurance Agreement or applicable state law (¶ 4), and in six out of the seven places that arbitration is mentioned in the paragraph it is followed by mention of an alternate legal proceeding.  (See Order ¶¶ 4(a), (c), (d).)

Trustmark also maintains that the Panel was aware that UniCare/Fremont was on the brink of insolvency and accordingly intended to provide Trustmark with an alternative to arbitration in the event that all arbitration demands against UniCare/Fremont were enjoined pending its liquidation proceedings. (Resp't's Resp. at 15.) In response, FCIC objects to Trustmark's claim of a drafting error, arguing that Trustmark should have raised this concern in a more timely manner. (Pet'r's Reply at 2.)

Although FCIC legitimately raises its timeliness objection, the Order remains ambiguous, and the Court cannot resolve this ambiguity, even at this late date. In general, courts will not enforce arbitration awards that are incomplete, ambiguous, or contradictory. Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Intern. Union, United Auto., Aerospace and Agr. Implement Workers of Am. (UAW), 500 F.2d 921, 923 (2d Cir. 1974). It is the job of the arbitrator, not the Court, to resolve any questions as to the meaning or extent of an arbitration award. See id. at 924 ("construing ambiguous provisions of an arbitration award is the proper province of the arbitrator, not the courts"); Rizzo v. Zalkin, No. 92 Civ. 6127 (SWK), 1994 WL 114836, at *6 (S.D.N.Y. March 31, 1994); Zephyros Mar. Agencies, Inc. v. Mexicana De Cobre, S.A., 662 F. Supp. 892, 895 (S.D.N.Y. 1987). See also C.J.S. ARBITRATION § 183 (2006). Rather than construing ambiguous provisions of an arbitration award, "the court must remand the award to the arbitrator with instructions to clarify the award's particular ambiguities." Brown v. Witco Corp., 340 F.3d 209, 216 (5th Cir. 2003) (citations omitted). See also Fischer v. CGA Computer Assocs., Inc., 612 F. Supp. 1038, 1041 (S.D.N.Y. 1985).

Accordingly, the Court cannot interpret ambiguous clauses of the Arbitration Award and cannot issue a ruling based on the aforementioned inferences and conclusions. The proper course

of action is to remand this issue to the Arbitration Panel for clarification. The Court needs instruction from the Panel as to whether it was Trustmark's option to pursue the question of redress of the $9,424,337 in another legal proceeding, without altering Trustmark's ultimate responsibility to FCIC, diminished only by whatever it received from arbitration or any other legal proceeding, if anything.

## IV.    CONCLUSION

The Court cannot issue a ruling on the pending motion for contempt [Doc. No. 23] until the ambiguity in the Arbitration Award is resolved. Accordingly, the Court **remands** to the Arbitration Panel the question of whether the Order provided for Trustmark's pursuit of a legal proceeding other than arbitration on FCIC's behalf. This proceeding is **stayed** pending a decision by the Arbitration Panel. The parties are to notify the Court of the Panel's decision within 10 days of its issuance.

SO ORDERED.

Dated at New Haven, Connecticut, November  13 , 2006.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court