UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARROWOOD INDEMNITY COMPANY, as successor to FIRE AND CASUALTY INSURANCE COMPANY OF CONNECTICUT,<br>    *Petitioner*,<br><br>    *v.*<br><br>TRUSTMARK INSURANCE COMPANY,<br>    *Respondent*. | Civil No. 3:03cv1000 (JBA)<br><br>March 29, 2013 |

**MEMORANDUM OF DECISION**

Pending before the Court is Petitioner Fire and Casualty Insurance Company's ("FCIC")[1] motion [Doc. # 106] for an order granting its motion for judgment and for contempt, based on the evidentiary record developed, and for entry of judgment against Respondent Trustmark for $9,424,337, and Respondent Trustmark Insurance Company's ("Trustmark") motion [Doc. # 103] to reinstate the Court's July 15, 2009 Order and vacate the Panel's Second Reply, dated June 24, 2010.[2]

In 2011, the judge originally assigned to this case, the Honorable Peter C. Dorsey, referred this matter to Magistrate Judge Thomas P. Smith for an evidentiary hearing, which Judge Dorsey had originally been scheduled to conduct. (*See* Scheduling Order [Doc. # 115].) At the time of Judge Dorsey's death, this hearing had already taken many

---

[1] Arrowood Indemnity Company is the successor by merger in 2007 to Security Insurance Company of Hartford, which in turn was the successor by merger in 2004 to Fire and Casualty Insurance Company of Connecticut. (*See* Pet.'s Mem. Supp. [Doc. # 49-2] at 1 n.1). For brevity, the Court refers to Petitioner as "FCIC."

[2] Also pending is Respondent's motion [Doc. # 108] to strike portions of Petitioner's motion for judgment and contempt. Inasmuch as the Court is considering the parties' motions on the basis of the evidentiary record that has been created, Respondent's motion [Doc. # 108] to strike portions of Plaintiff's motion is DENIED.

days, and after case reassignment, this Court ordered expedited conclusion of this prolonged hearing. (*See* Ruling on Motions and Order of Referral [Doc. # 170].) In total, Magistrate Judge Smith presided over "at least fifteen days of evidentiary hearings and many hours of argument," and has issued his Report and Recommendation [Doc. # 199] ("R&R"), to which Respondent objects on numerous grounds and which Petitioner seeks to modify slightly.

For the reasons that follow, the Court declines to adopt the R&R, concludes as a matter of law that the 2007 Amended Judgment confirming the arbitration award is the final judgment, and based on the evidentiary record developed, denies Petitioner's motion for an order of contempt and entry of judgment against Trustmark. The Court also denies Respondent's motion to reinstate the Court's 2009 Order.

## I.   Factual Background[3]

FCIC was Trustmark's fronting reinsurance company, pursuant to which it entered into a Reinsurance Agreement with UniCARE (now Fremont Indemnity Company). FCIC submitted to Trustmark for payment the payments it had made to UniCARE/Fremont which Trustmark disputed were covered under the Parties' Retrocession Agreements, as well as Trustmark's future obligations. These issues were submitted by Trustmark and FCIC to an arbitration. This case originated with a petition to confirm the ensuing arbitration award, but has transmogrified over the years to become the antithesis of the speedy, inexpensive dispute resolution process that the Federal Arbitration Act ("FAA") intends. *See Conticommodity Serv., Inc. v. Philipp & Lion*, 613 F.2d 1222, 1224 (2d Cir.1980) ("Arbitration is intended to provide the parties to

---

[3] For a full recitation of the facts underlying this dispute, see Ruling and Order Staying the Proceeding [Doc. # 43] at 2–6.

2

a dispute with a speedy and relatively inexpensive trial before specialists."); *see also* 9 U.S.C. § 1 *et seq.* Briefly, the Arbitration Panel selected by the parties to resolve these disputes issued an award on May 23, 2003, which found that "[u]nder the terms of the Retrocession Agreement, Trustmark did not assume liability for the following:

> (a) Small group business as defined in the broker placing material dated February 26, 1998;
>
> (b) Fines, interests or penalties assessed under the California Labor Code against UniCARE or its designated agents; and
>
> (c) Continuous trauma claims allocable to periods outside that covered by the Retrocession Agreement.

2. As of February 28, 2003, UniCARE/Fremont has misallocated and improperly reported to FCIC and Trustmark for payment pursuant to the Reinsurance Agreement the following for which Trustmark did not assume liability under the Retrocession Agreement:
Small Group:                          $ 837, 026
Continuous Trauma Claims:  $ 8,470,119
Fines, Interest, and Penalties: $117,192
                    TOTAL: $9,424,337

3. The Panel finds that $15,766,788 less $9,424,337 . . . or $6,342,451 is due and owing to FCIC by Trustmark.[4]
4. Panel believes that FCIC is entitled to reimbursement of the $9,424,337 paid by it to UniCARE/Fremont pursuant to the Reinsurance Agreement. The Panel hereby orders the following alternative procedures regarding this matter:
> (a) In the event that FCIC, in its sole discretion, determines that offset will not provide it with the timely recapture of these monies, it may pursue its arbitration or other legal rights pursuant to the Reinsurance Agreement and applicable state law. Because the evidence of the misallocated and improperly reported amounts set forth in Paragraph 2 above resides in the hands of Trustmark and its witnesses, FCIC shall, in its sole discretion, prepare and execute a power of attorney enabling Trustmark to initiate an arbitration or other appropriate legal proceeding in FCIC's name against

---

[4] Trustmark has already paid FCIC this undisputed amount.

UniCARE/Fremont. FCIC shall bear all the expenses in connection with this arbitration or other legal proceeding. In the event that the arbitration or other legal expenses exceed 25% of the ultimate award, Trustmark shall pay one-half of any such expenses in excess of 25%. In the event that it is found in an arbitration or other legal proceeding that UniCARE/Fremont did not misallocate or improperly report to FCIC and Trustmark any or all of the amounts set forth in Paragraph 2 above, Trustmark shall promptly return such amounts to FCIC.

(b) In the event that Trustmark refuses to bring an arbitration proceeding on behalf of FCIC against UniCARE/Fremont within six (6) months from the date of the execution of the FCIC power of attorney, then it shall pay $9,424,337 to FCIC.

(c) In the event that UniCARE/Fremont voluntarily pays $9,424,337 to FCIC, no arbitration or other legal proceeding . . . is necessary.

(d) In the event that FCIC decides not to seek reimbursement of the amounts set forth in Paragraph 2 above or enforce its rights by means of an arbitration or other proceeding against UniCARE/Fremont pursuant to Paragraph 4(a) above, Trustmark shall have no responsibility to FCIC for the amounts set forth in Paragraph 2 above.

(e) In any proceeding conducted pursuant to Paragraph 4(a) above, both FCIC and Trustmark shall afford each other full and complete cooperation.

(Award, Ex. D to Grais Decl. [Doc. # 8] at 2–3.)

This arbitration award was confirmed on Petitioner's application on July 21, 2003 [Doc. # 19]. More than three years later, and after UniCARE/Fremont was ordered into liquidation proceedings, Petitioner moved for a finding of contempt against Trustmark, because it had not brought "an arbitration proceeding on behalf of FCIC against UniCARE/Fremont" under the literal terms of ¶ 4(b) of the award. In the context of the Award as a whole, Trustmark claimed, and Judge Dorsey agreed, that 4(b) was ambiguous

because of its omission of "or other legal proceeding" from only ¶ 4(b). Hence Judge Dorsey remanded the award to the Panel and asked for "instruction . . . as to whether it was Trustmark's option to pursue the question of redress of the $9,424,337 in another legal proceeding, without altering Trustmark's ultimate responsibility to FCIC, diminished only by whatever it received from arbitration or any other legal proceeding, if anything." (Ruling and Order Staying the Proceeding at 9.) In April 2007, the Panel clarified that Trustmark had the option to "pursue the question of redress" in "another legal proceeding" in addition to arbitration. (*See* April 21, 2007 Panel Reply [Doc. # 46].) Judge Dorsey entered an amended judgment confirming the award, with this clarification on June 1, 2007. (*See* Amended Judgment [Doc. # 48].)

Thereafter, on November 25, 2008, Petitioner again moved for contempt against Trustmark, this time because Trustmark did not pursue setoff remedies on FCIC's behalf. In July 2009, Judge Dorsey denied this motion for contempt and for entry of judgment against Trustmark, ruling that in spite of Petitioner's contention that the filing of a Class 7 claim in the UniCARE/Fremont liquidation would be "worthless," "[t]he Award does not require Trustmark to take any particular action in the legal proceedings on behalf of Trustmark."[5] (*See* Order on Motions for Judgment and to Dismiss [Doc. # 74] at 5.) He found that Respondent had not violated a court order, and thus could not be found in contempt, and rejected Petitioner's assertion that the arbitration award required Trustmark to exercise set off on behalf of FCIC, noting "[t]he Award is clear that FCIC could choose either to exercise a right of set off or to have Trustmark pursue a legal proceeding on its behalf. FCIC chose the lat[t]er, apparently preferring a legal proceeding to set off." (*Id.*)

---

[5] This is the Order that Respondent asks the Court to reinstate.

Petitioner then moved for reconsideration of this Order, and in October 2009, though Judge Dorsey declined to alter his Order after reconsideration, he stated that he had been persuaded that another ambiguity had arisen, this time from the language of the April 21, 2007 Panel Reply's to the remand order:

> The parties have convincingly disputed whether the phrase "ultimate responsibility," as used in the April 21, 2007 Response re Ruling and Order, includes a duty by Trustmark to pay FCIC the $9,424,337 in question. . . . As the dispute at hand concerns the scope of the Arbitration Award, the Arbitration Panel is the most appropriate body to clarify the meaning of the above phrase.

(Order on Motion for Reconsideration [Doc. # 84] at 2.) This phrase does not appear in the original award, only in the remanded question and Panel Reply incorporation of it. Judge Dorsey remanded four questions to the Panel, which the Panel majority addressed, over Respondent's objection, in the July 2010 Reply.[6] Two of these questions, with the Panel majority's responses, are reproduced below.

I)   If Trustmark fails to recover anything from the Fremont estate, is Trustmark liable to FCIC for the $9,424,337?
**Panel Response.** Based on the record before us, the Panel's answer is yes by a majority vote. If the Panel were to have conducted a post–Final Order evidentiary proceeding, we would have endeavored to determine the facts and the law regarding two key issues: (1) Whether Respondent, as attorney–in–fact appointed pursuant to the Petitioner's . . . Forward–Looking Power of Attorney and . . . Misallocation Power of Attorney, breached any of its duties to the Petitioner as its attorney–in–fact under the two powers of attorney. . . . The Panel Majority rejects Respondent's interpretation of Para. 4(a) of our final Order, i.e., that Petitioner's determination that offset would not provide it with the timely recapture of the $9,424,337 paid by it to Fremont and its decision to execute the

---

[6] When the Panel majority proceeded to respond substantively, it is likely that at that point this case entered what Magistrate Judge Smith calls the "Big Muddy," because the panel was then *functus officio*, both parties had not agreed to the Panel's further actions and its responses did not simply clarify the original award. The Court addresses this issue *infra* in Section II.A.

> Misallocation Power of Attorney and file a proof of claim in the Fremont liquidation proceeding precluded the assertion of those setoff rights in any subsequent arbitration or other legal proceeding initiated by Respondent in Petitioner's name against Fremont. It was our intent that Petitioner's setoff rights could be pursued in any subsequent arbitration or other legal proceeding regardless of whether it was initiated by Petitioner itself or by Respondent as its attorney-in-fact.

II) If the answer to question I is 'yes,' is Trustmark liable to FCIC for the $9,424,337 even if Trustmark used best faith efforts to recover the sum from Fremont?

> **Panel Response**. If "best faith efforts" means Respondent's full and complete compliance with all of its duties as attorney-in-fact to its principal, the Petitioner . . . the answer is no; however, such a determination would be contingent upon the findings of fact and conclusions of law reached with regard to the issues set forth above in the Panel majority's response to Question I which this Panel cannot do because it is beyond what we were asked to arbitrate.

(June 24, 2010 Panel Reply [Doc. # 102-1.)

Thus, after the Panel's second response, this case morphed into an evidentiary hearing on whether Respondent's post–arbitration conduct in pursuing a Class 7 claim in the liquidation proceeding as "an arbitration or other appropriate legal proceeding in FCIC's name against UniCARE/Fremont" (Award ¶ 4(a)) reflected a reasonable discharge of its duties under the Award. This evidentiary record is now available for this Court's use in deciding Petitioner's motion for contempt and for judgment.

II. Discussion

    **A. Respondent's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

The FAA provides the exclusive, and limited, authority for federal court review of an arbitral award, *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), and Respondent maintains that the second round of questions should not have been remanded to the Panel in 2009 because the arbitration panel, having decided the

7

submitted issues in 2008, was *functus officio*, i.e., "discharged from its work," and lacked the authority to further consider its award in the context of the 2009 remand.

Section 10 of the FAA only allows a district court to vacate an arbitration award under narrow circumstances: "where the award was procured by corruption, fraud, or undue means," "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced," or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *See* 9 U.S.C. §§ 10(a)(1)–(4). The award ambiguities asserted and found, then compounded by subsequent commentary on their intention, arguably support the "imperfect execution" grounds in this case, but neither party has moved to vacate the award.

The district court is also limited in its authority to modify or correct an arbitration award. Section 11 of the FAA provides:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—
> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy. The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11. In *Hall St. Associates*, the Supreme Court, construing these sections, reasoned that "the text compels a reading of the §§ 10 and 11 categories as exclusive. To

begin with, even if we assumed §§ 10 and 11 could be supplemented to some extent, it would stretch basic interpretive principles to expand the stated grounds to the point of evidentiary and legal review generally." 552 U.S. at 586. It would be at best, "irregular" to apply this FAA section to the dispute which has ensued over the Panel majority's Second Reply, although "imperfection" is probably an apt term. The mandate to modify or correct to "promote justice between the parties" would have helped frame the outcome of pending motions, except that a "modification" on this basis would be time-barred by Section 12, which provides that the time to modify an award pursuant to § 11 is limited to three months:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney *within three months after the award is filed or delivered*. . . . For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

9 U.S.C. § 12 (emphasis added). This time limit is "strict." *Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 368 (D.C. Cir. 2011) *cert. denied*, 132 S. Ct. 761 (2011) ("[C]ourts have consistently interpreted the FAA notice provision [in section 12] to create a strict deadline."); *see also Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) ("No exception to this three month limitations period is mentioned in the statute. Thus, under its terms, a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm.").

Thus, although neither party ever moved to vacate, modify, or correct the award, Petitioner seeks to "enforce" it by the procedural mechanism of a contempt motion dependent on Petitioner's interpretation of the award language, which Respondent has

9

disputed throughout. Moreover, the Panel majority's second response produced more than a clarification of its award; it altered its finding of Trustmark's non-obligations to FCIC by setting out new means by which Trustmark would become liable to FCIC (*compare* May 23, 2003 Award *with* Panel 2010 Reply).[7]

Since the Panel issued its final award, and as the Second Panel Reply noted, both parties did not agree to have the Panel re-determine its award, the Panel was *functus officio* at the time it elected to substantively respond to the 2009 questions. "[I]f the parties have asked the arbitrators to make a final partial award as to a particular issue and the arbitrators have done so, the arbitrators have no further authority, absent agreement by the parties, to redetermine that issue." *Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991). While there remains "limited authority" to remand to a panel "to correct certain mistakes," such as was done with the first remand, the Panel was not asked to correct other "evident material mistakes," *see Hyle v. Doctor's Assocs., Inc.*, 198 F.3d 368, 371 (2d Cir. 1999), only to, in effect, give advisory opinions on the terms used in the questions—i.e., "ultimate responsibility" and "best faith efforts"—and resultingly expanded its award to encompass further circumstances under which Respondent would become liable to Petitioner for $9,424,377. (*See* Panel 2010 Reply at 3–4 ("In the Panel majority's responses to Questions I, II, and III above, we offer the Court our assessment of the factual and legal questions at the heart of the current dispute. To go further would require an evidentiary hearing to determine the post-Final Order facts and law that we have no power to conduct.").)

---

[7] The Dissenting Arbitrator, in response to the first question posed on second remand, noted: "[t]he wording in the Panel's Final Order [May 2003] is clear and unambiguous and was specifically designed by the Panel to address Trustmark's non-obligation to FCIC. . . . *Nothing has changed the Panel's order in this regard.*" (*See* Panel 2010 Reply at 3 (emphasis added).)

Thus the Court concludes that the Panel was without authority to further determine Trustmark's "ultimate responsibility to FCIC" and role of Trustmark's "best faith efforts" beyond its original award, and the 2007 Amended Judgment should remain in force. Whatever dispute the parties have now about how Trustmark carried out its duties under its power of attorney ("POA") is not within the scope of this case and must be litigated in an independent proceeding.

### B. Petitioner's Motion for Entry of Judgment Against Trustmark

Petitioner asks the Court to enter judgment against Trustmark in the amount of $9,424,337 because, under the terms of the "clarified" award, it has shown that Trustmark was "required" to exercise offset on FCIC's behalf (*see* Pet'r's Reply [Doc. # 184] at 2), and that because it did not, Trustmark is now responsible to FCIC for the $9,424,377.[8]

The Court has now reviewed the transcripts and exhibits from the evidentiary hearing afforded to Petitioner on its motions. The record clearly reflects that Respondent had consistently interpreted the terms of the May 23, 2003 Award differently than did FCIC—and, it bears noting, in the same manner that Judge Dorsey interpreted the Award in 2009—i.e., that FCIC could elect to exercise offset on its own behalf *or* elect to assign Trustmark POA to bring an arbitration or other legal proceeding to recover the monies.[9]

---

[8] While FCIC's expert Mr. Maisel's opinion addresses the subject of Trustmark's duties as attorney-in-fact to its principal, FCIC, albeit without arbitral award context, *see infra*, it underscores how far from the original award the Panel majority strayed with its Second Reply.

[9] The parties were aware, as early as 2006, that the Court had interpreted the Award in this manner. The 2006 Ruling denying Petitioner's first motion for contempt [Doc. # 43] stated "[w]hile it is clear and unambiguous that the Order provides FCIC with two options, either to recapture its monies by offset or to have Trustmark pursue a claim on FCIC's behalf in some sort of legal proceeding, the Order is ambiguous as to whether or not the second alternative requires Trustmark to initiate arbitration or whether

The Panel majority "clarified" its original award after the California Liquidation Office ("CLO") proceedings were completed to make offset an option available to both FCIC "in its sole discretion" and Trustmark acting as FCIC's attorney-in-fact. This, however, does not render offset a requirement under the award, contrary to Petitioner's contention. Thus the Court will analyze whether the evidentiary record supports Petitioner's claim that Trustmark failed to discharge its duties in filing a Class 7 unsecured creditor claim on behalf of FCIC with the CLO such that it should be responsible to FCIC for the $9,424,337.

The Report of Attorney Christopher Maisel, FCIC's expert witness on customs and practices in insurance insolvency—including liquidations under California's statutory rubric—provided a general description of how the reinsurance industry operates in insurance liquidations and how claims are prioritized in California by classes, with "[c]laims under contracts of reinsurance against the insolvent [such as Respondent filed] . . . included in Class 7." (Maisel Expert Report [Pet'r Ex. 54] at 4.) His description of reinsurers' customs and practices regarding setoff, however, does not address whether Trustmark was *required* to file both setoff and Class 7 claims under the arbitration award.

Thus, while he opines that after the Misallocation POA was issued by FCIC to Trustmark, Trustmark should have also exercised FCIC's right of setoff in addition to filing the proof of claim in the Fremont liquidation estate for the $9,424,377, to put the burden on the liquidator to arbitrate, he does not relate this duty to the procedure ordered by the arbitration. The five breaches of duty of care as a fiduciary acting under a

---

another appropriate legal proceeding will suffice. " (*See* Ruling at 7.) FCIC never moved for reconsideration or appealed the Court's ruling that the Award unambiguously "provides FCIC with two options, either to recapture its monies by offset or to have Trustmark pursue a claim on FCIC's behalf." (*Id.*)

power of attorney are not grounded in the duties imposed by the award, and curiously, when asked by Magistrate Judge Smith whether he had accused Trustmark of breaching its fiduciary duty, Mr. Maisel responded that "[n]o," he had not. (Tr. 1253:8–12.)

Although Mr. Maisel's report tracks FCIC's position that Trustmark was required to assert FCIC's setoff rights, but it does not address in anyway the narrow question here—that is, what was Trustmark obligated to do under the award. The evidence presented shows no common understanding between the parties as to their respective obligations to each other within the context of this Award. Shortly after the original Award was issued in May 2003, FCIC and Trustmark began the process of drafting and executing the Forward Looking and Misallocation Powers of Attorney described in the 2003 Award. (*See* Nov. 5, 2003 Forward Looking POA; Apr. 28, 2004 Misallocation POA.) At some point during this time period, UniCARE/Fremont was forced into liquidation proceedings, and Trustmark began to work with the CLO. Furthermore, between the time these POAs were signed and Trustmark filed the Class 7 claim in the liquidation proceeding, FCIC's own actions regarding setoff were inconsistent, or at minimum gave mixed signals to Trustmark.

FCIC clearly had the right to assert its setoff rights against UniCARE/Fremont under the contract, but retained its "sole discretion" to determine that "offset will not provide it with the timely recapture of these monies."[10] It seems nonsensical that, if FCIC made such a determination of why it would not seek offset itself, that Trustmark, acting on its behalf, could fare any better, thus giving strength to Trustmark and Judge Dorsey's

---

[10] Mr. Haver testified that at the time the POAs were executed, FCIC had determined that offset would not have provided it with such timely recapture, as "the amount owed or the amount that UniCARE was claiming it was owed did not equal, was less than 9.4 million." (Tr. 81.)

view that FCIC had "two options, either to recapture its monies by offset or to have Trustmark pursue a claim on FCIC's behalf in some sort of legal proceeding." (Ruling [Doc. # 43] at 7.) Mr. Maisel's opinion that Trustmark was obligated to do both clearly is unrelated to the award obligation to do one or the other.

In October 2007, Mr. Haver sent an email to Trustmark indicating that he would like offset rights to be included as part of the CLO Commutation Agreement. Mr. Raymond Lester responded on behalf of Trustmark, and said that if FCIC wanted to exercise offset "at this late date," Trustmark would be willing to permit FCIC to withdraw its Power of Attorney. (*See* Resp. Ex. 28 at 65-A.) This is consistent with Respondent's repeatedly-articulated interpretation of the structure of the Award: that FCIC had two options—the first, to exercise offset on its own, and the second, to assign Trustmark POA to pursue the funds in an arbitration or other legal proceeding.[11] Mr. Haver responded that "[a]t this point we do not wish to withdraw either Power of Attorney that we gave to Trustmark after the 2003 arbitration award") (*id.* at 69-A), but also noted that he believed Trustmark to be in violation of its duties under the Award because of its refusal to exercise offset on FCIC's behalf. (*See* Tr. 371–373.)

FCIC again asked Trustmark to pursue setoff rights on its behalf on November 6, 2007 (*see* Tr. at 150), but then at the meeting held the next day with the CLO on November 7, 2007, it sat silently and did not object while the details of the Commutation Agreement, which included a waiver of the right to offset, were negotiated.[12]

---

[11] In fact, Mr. Maisel describes offset as a "self help remedy" triggering certain action by the liquidator, which makes sense as to why the award distinguishes between offset and arbitration or other legal proceeding."

[12] Mr. Dennis Haver, Vice President and Assistant General Counsel to Arrowood and serving as FCIC's representative at the time, testified that he did not believe that the

14

Mr. Maisel's report does not address these mixed signals and disputed interpretations of the parties' respective obligations under the award. Notwithstanding these two contrasting interpretations of the award in late 2007 and early 2008,[13] FCIC never requested any arbitral or judicial clarification. It was only after Judge Dorsey's ruling in July 2009, well after the Commutation Agreement with the CLO had been signed, the Class 7 claim had been accepted by the CLO, and Trustmark had made the payment agreed to, that FCIC filed its second motion for contempt and judgment [Doc. # 49], contending that Trustmark had violated the arbitration award or that the award had another, latent ambiguity that required clarification.

This record does not support FCIC's claim that Trustmark failed to discharge its responsibilities under the award, based on its own reasonable interpretation of the award, when it settled FCIC's claim with the CLO in its particular chosen manner. Petitioner's assertion that because it did not waive its right to offset under the Award, Trustmark was *required* to exercise such rights under the award is not supported by the evidence or the language of the award. Whether Trustmark breached its fiduciary duty to FCIC in other ways, as Mr. Maisel opines, is far beyond the scope of this limited confirmation and enforcement of the arbitral award.

---

Powers of Attorney entitled him to object to the legal strategies taken by Trustmark on FCIC's behalf. (*See also* Jan. 7, 2008 Letter from Dennis Haver to Raymond Lester [Resp. Ex. 28] at CORR00079 ("FCIC has not protested the proposed settlement directly to the CLO because of the broad scope of the power to deal with the CLO that FCIC designated to Trustmark.").)

[13] Mr. Haver's testimony reflects his awareness of the parties' differing understandings of the Award. For example, when asked on cross-examination whether "each time you demanded offset, Mr. Lester wrote back and said, Trustmark doesn't have to offset because you made an election?" Mr. Haver testified, "[t]hat was his position, yes." *See* Tr. at 373:22–25.

Petitioner relies on *Zeiler v. Deitsch*, 500 F.3d 157 (2d Cir. 2007) for the proposition that it is within the Court's discretion to enforce a judgment of $9,424,377 against Trustmark, but this presumes that the Court finds that under the terms of the award, Trustmark is responsible for making that payment. *See Zeiler*, 500 F.3d at 169 ("A district court confirming an arbitration award does little more than give the award the force of a court order. At the confirmation stage, the court is not required to consider the subsequent question of compliance."). Since, for the reasons discussed above, the Court declines to interpret the award as FCIC urges, "the judgment to be enforced encompasses the terms of the confirmed arbitration awards and may not enlarge upon those terms." *id.* at 170, enforcement of the terms of the Award precludes entry of an order that Trustmark is subject to a $9 million judgment in favor of FCIC.[14]

### C. Petitioner's Motion for Contempt

FCIC also moves for a finding of contempt against Trustmark. A party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.1995).

Based on the evidence discussed above, FCIC has not established that Trustmark should be held in contempt. As to the first requirement, the Award that FCIC claims Trustmark violated, which it now maintains is "clear and unambiguous," previously

---

[14] As discussed *supra*, it is the Court's view that the Panel lacked the authority, on the second remand, to "expand" the scope of the original award in the manner that it did. Because of this, the Court declines to modify the Amended Award to incorporate the Panel's Second Reply.

produced two remands to the Panel on account of claimed ambiguities in the Award, and FCIC has not objected to the R&R's proposed third remand for clarification of the most recent "clarified" award which Magistrate Judge Smith characterizes as "opaque at best" (R&R at 2), and thus is not a "clear and unambiguous" order.

Next, FCIC has not established by clear and convincing evidence that Trustmark violated the terms of the Award. The evidence shows that Trustmark, once given the Forward Looking and Misallocation POAs on behalf of FCIC, submitted the proof of claim on FCIC's behalf and settled all claims in the Fremont liquidation proceeding with full knowledge of FCIC, to whom it had offered to return the POA if FCIC wanted to pursue offset, which FCIC declined. FCIC has failed to show that this conduct was clearly and convincingly non-compliant.

Trustmark maintained its position that offset was for FCIC to exercise, and FCIC explained that it did not elect to exercise setoff because of its limited potential for financial return. Because Trustmark's interpretation of the award is reasonable (and consistent with Judge Dorsey's interpretation), FCIC fails to show that Trustmark has not diligently attempted to comply in a reasonable manner. That FCIC may receive no distribution from the insolvent estate, as Mr. Maisel predicts, and what different outcome would likely have occurred if both offset and a Class 7 claim were simultaneously pursued without settlement, are left for another forum to address. Thus, Petitioner has not met its burden of proof for a finding of contempt and its motion will be denied.

### D. Respondent's Motion to Reinstate the July 2009 Order

Trustmark asks the Court to reinstate Judge Dorsey's July 2009 Order denying Petitioner's motion for contempt and judgment, thereby confirming the Award as clarified after the first remand and staying the case. As the Court has found that FCIC has

not proved that Trustmark failed to reasonably discharge its duties under the Award in its representation of FCIC, no money judgment in FCIC's favor will be entered against Respondent. The 2007 Amended Judgment confirming the Award as clarified in the first Panel Reply remains in effect, and this case will now be closed. Therefore, Respondent's motion is largely moot.

### III.     Conclusion

It is now time for these parties to either accept this outcome or to move on to the appellate stage, or commence an independent civil action. Because, in the Court's view, a third remand to the Panel is neither authorized, nor likely to be productive, the Court declines to adopt the Report and Recommendation [Doc. # 199], though it is very grateful to the Magistrate Judge for having developed the factual record permitting this final determination.

Accordingly, Petitioner's motion to enforce the judgment [Doc. # 103] is DENIED, and Respondent's motion to reinstate the July 2009 Order [Doc. # 106] is DENIED as moot, to the extent that Respondent seeks to reinstate the July 2009 Order, and GRANTED, to the extent that the Court recognizes the 2007 Amended Judgment as the Final Judgment. As discussed above, Respondent's Motion to Strike [Doc. # 108] is also DENIED.

The Clerk is directed to close the case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of March, 2013.